IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ella V. Moody,

    Plaintiff,

  v.                                             Case No. 2:10-cv-0084

Michael J. Astrue,                        JUDGE SMITH
Commissioner of Social Security,       MAGISTRATE JUDGE KEMP

    Defendant.

## OPINION AND ORDER

This is a social security disability case in which plaintiff has asked the Court to review an unfavorable decision made by the Commissioner of Social Security.  Plaintiff is proceeding *pro se*. She has never filed a statement of specific errors despite a number of orders which were issued directing that she do so and explaining why the Court cannot conduct a meaningful review of the administrative decision unless she identified what errors she believed were committed during the administrative process.  As a result, on June 7, 2010, the Magistrate Judge issued a Report and Recommendation which recommended that this case be dismissed.  Plaintiff filed an objection. The Commissioner did not respond.  The basis of plaintiff's objection is not that the law does not permit this type of case to be dismissed if the plaintiff does not file a statement of errors, but that she is unable to comply with the orders directing her to do so because of her pain.   She claims to be totally disabled due to osteoarthritis.

There is some authority for the proposition that once a plaintiff files a complaint seeking review of a decision of the Commissioner of Social Security, it is not technically necessary for the plaintiff to file a motion for summary judgment in order to obtain judicial review or in order to

avoid a dismissal for failure to prosecute.  *See, e.g., Wright v. Commissioner of Social Security*, 2010 WL 5420990 (E.D. Mich. December 27, 2010); *Kenney v. Heckler*, 577 F. Supp. 214 (N.D. Ohio 1983).  On the other hand, it is common for courts to hold that the failure of a plaintiff to raise an issue in a brief constitutes a waiver of that issue.  *See, e.g., Bollas v. Astrue*, 694 F.Supp. 2d 978, 990 (N.D. Ill. 2010).  By extension, that reasoning leads to the conclusion that the failure to file a brief at all is a waiver of any issue which might require reversal of the administrative decision.  Especially where the claimant is represented by counsel at the District Court level, it is certainly appropriate to require a plaintiff to identify with some specificity which portions of the administrative decision he or she believes to be wrong, and why.  Otherwise, the Court is required to guess about what issues it is being asked to review, and is also required to make the plaintiff's arguments for him or her, which is contrary to the Court's position as a neutral arbiter of disputes between the parties before the Court.

Here, the Court would be entirely justified in declining to review the administrative decision because plaintiff has not told the Court why she thinks that decision is wrong, other than because she believes she is disabled and the Administrative Law Judge found that she was not.  However, the Court has reviewed the record which led to the decision to deny plaintiff's claim for benefit to see if the Administrative Law Judge committed any obvious or glaring errors that might justify a reversal of that decision or a remand for additional proceedings.

Plaintiff submitted her claim on March 29, 2004.  It was a claim for supplemental security income benefits only.  It was denied both initially and upon reconsideration, after which plaintiff asked for a hearing.

Plaintiff was represented by an attorney at an administrative hearing which was held on

December 14, 2006.  A medical and a vocational expert also testified at that hearing.  When a second administrative hearing was held on June 7, 2007, plaintiff proceeded without counsel.  Another vocational expert appeared at that hearing.

The Administrative Law Judge issued a decision on August 2, 2007.  He found that plaintiff did have some severe impairments, which included moderate to severe osteoarthritis in both knees.  She had also had hammertoe surgery in the past and suffered from obesity and degenerative disc disease.  The ALJ found that she could still work at the light exertional level (that is, she could sit for up to eight hours in a workday, stand for four hours, walk for two hours, and lift up to 20 pounds).  She did have some restrictions on activities such as kneeling, bending, crawling, crouching and stooping due to her knee problems, and she should not be exposed to temperature and humidity extremes.  Nevertheless, the ALJ concluded that she could still do some jobs such as new account interviewer, order clerk, or receptionist - all jobs identified by the vocational expert as jobs that someone with plaintiff's education and work experience, and who could work at the light exertional level, could perform.  As a result, she was found not to be entitled to benefits.

The medical records which the ALJ reviewed were not extensive.  One of plaintiff's treating doctors, Dr. Aukerman, responded to a questionnaire in 2004 indicating that she could not stand or walk for any length of time due to, among other conditions, bilateral knee pain and obesity. (Tr. 113-14).  However, a report of March 4, 2004 from Dr. Rocco, an orthopedic specialist, showed only early stage osteoarthritis of the left knee, together with some patellofemoral arthritis. (Tr. 131-32).  A state agency physician looked at these records and concluded that plaintiff could do medium work, involving lifting up to 50 pounds and standing

3

and walking for most of the day. (Tr. 206-210). Another state agency doctor concurred with those findings.

Dr. Powers examined plaintiff on March 7, 2007. His findings included some mild degenerative changes in plaintiff's back and degeneration of the knee joints. During the examination, she was able to tandem walk, stand on a bent knee, and walk on heels and toes. There was some slight crepitation noted in both knees. Range of motion tests were nearly normal. Dr. Powers filled out a form on which he indicated that plaintiff could do a limited range of light work, with some postural restrictions and environmental restrictions. (Tr. 244-256). It was his opinion of plaintiff's work capacity which the Administrative Law Judge adopted. The only other medical records are some ongoing treatment notes, none of which indicate total disability.

Plaintiff did testify to disabling pain at the first administrative hearing. At that point, she had not worked since 1991, when she was working as a home health care aide. She had also been a realtor. She told the ALJ that she had no strength in her knees and had dull pain in her back, but she did not need to walk with a cane. She could walk or stand for up ten minutes and sit for up to twenty. She also went shopping occasionally and could do some minor household chores. She needed to rest frequently during the day, although most of that rest was just sitting down. Several times a week she would strain her back to the point where she was "out" all day. At that hearing, Dr. Kendrick, the medical expert, thought plaintiff could do a full range of sedentary work but could not stand or walk for more than two hours a day. The vocational expert then identified some jobs she could do. Plaintiff essentially repeated the same testimony at the second hearing, which was held after Dr. Powers submitted his report. Dr. Kiger, a different vocational

expert, then testified to jobs plaintiff could do if Dr. Powers' assessment of her capabilities was accurate.

The Administrative Law Judge followed the proper five-step process in evaluating plaintiff's claim. At the first step, he found that she had not engaged in any substantial gainful activity (that is, she had not worked for a living) since the date on which she claimed she became disabled. At the second step, he found that she did have a number of medical conditions that affected her ability to work. It does not appear that plaintiff is claiming to have any other medical conditions besides the ones which the ALJ found to be severe. At the third step, he compared her symptoms to a Listing of Impairments which provides that certain types of symptoms render a person presumptively disabled. Again, nothing which plaintiff has filed seems to indicate that she disagrees with this analysis, and the Court's own review of the administrative decision does not reveal any error. In order for someone to qualify as disabled under the Listing, there must be a specific opinion from a medical source that all of the requirements of the Listing have been met, and there is no such opinion here.

The next step in the process is for the ALJ to decide how limited a claimant is by his or her medical conditions. That is usually the most crucial step of the analysis. Once this question is decided, especially in a case where a vocational expert is called to testify, the case is basically resolved, because the vocational expert will usually be asked only to state whether someone who has the claimant's particular limitations can still work, so the extent of those limitations is crucial.

When deciding how much a claimant is limited by his or her medical conditions, the ALJ has to evaluate the medical evidence. He has to pay particular attention to the opinion of a treating doctor, especially one who has said that his patient is disabled, and if there is such an

5

opinion, the ALJ both has to have good reasons for not accepting that opinion and has to explain why it was not accepted.  *See Wilson v. Commissioner of Social Security*, 378 F.2d 541 (6th Cir. 2004).  Further, the ALJ must look to see whether the medical evidence is in conflict and, if it is, decide which doctor or doctors to believe.  It is important to remember that such decisions are to be made by the ALJ and not by the Court; the Court's job is not to decide that type of question on its own, but only to review the ALJ's decision to see if a reasonable person, taking into account all of the evidence in the record, could have decided the issue in the same way.  *See* 42 U.S.C. §405(g); *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997).

     Here, Dr. Aukerman, who treated plaintiff at one time, did fill out a form stating that plaintiff could not walk or stand for any length of time.  However, the ALJ did not give much weight to that opinion because it did not state why Dr. Aukerman believed that, nor did the objective medical evidence - things like x-rays or other tests - show that plaintiff had any conditions which would limit her so severely.  Also, other medical evidence contradicted it.  Two state agency physicians thought plaintiff could do medium work, and although the ALJ did not accept their opinions, either, because there was more medical evidence developed after they completed their review of the case, it does show that at the same time Dr. Aukerman said plaintiff was almost bedridden, other doctors strongly disagreed.

     Dr. Kendrick, the testifying medical expert, thought that plaintiff would be able to do what is generally required to do a sedentary job.  The ALJ considered his opinion but noted that there were no medical records which supported such extreme limitations.  He found Dr. Powers' opinion the most believable because Dr. Powers did examine plaintiff, he explained his findings in detail, and they were consistent with the results of the tests he administered.  A reasonable person

could have reached these conclusions on the basis of all of the medical evidence which was in the record.  Because that is so, the Court may not substitute its judgment for that of the Administrative Law Judge.

The only other possible issue which might exist in this case is whether the ALJ was allowed to find that plaintiff was not as limited as she testified.  Certainly, these types of cases cannot be decided in a claimant's favor every time the claimant testifies that she is disabled.  The Administrative Law Judge can decide that a claimant is not as badly off as he or she says, but must point out reasons why that conclusion was reached.

Here, the ALJ conducted an extensive review of the plaintiff's testimony.  He found that she described pain and limitations which seemed to be unsupported by any medical tests and that there were other reasons, such as a lack of aggressive treatment, why he did not have to give full credit to her testimony.  Again, this is a decision that the ALJ is to make in the first instance, and the Court should not lightly substitute its judgment for that of the ALJ because it is the ALJ who has seen the plaintiff testify, and who has the duty to resolve any conflicts between the claimant's testimony and the rest of the evidence.  *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)("[i]t is for the Secretary, not a reviewing court, to make credibility findings").

In conclusion, although the plaintiff has not filed a statement of errors, and although the Court is not obligated to review the record for error, it has done that.  There are no obvious errors in the record.  The decision to deny plaintiff's claim for benefits is one that a reasonable person could have made based on this record, and under those circumstances, the Court must affirm the Commissioner's decision.  It therefore **DISMISSES** the case and directs the Clerk to

enter judgment in favor of the Defendant Commissioner.

    **IT IS SO ORDERED.**

    *s/ George C. Smith*
    **GEORGE C. SMITH, JUDGE**
    **UNITED STATES DISTRICT COURT**